1  JEFFER MANGELS BUTLER & MITCHELL LLP
   MARTA M. FERNANDEZ (Bar No. 120540)
2  *MFernandez@jmbm.com*
   VINCE FARHAT (Bar No. 183794)
3  *VFarhat@jmbm.com*
   BRIANNA FRAZIER EARLEY (Bar No. 297354)
4  *BFrazierEarley@jmbm.com*
   1900 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
6  Facsimile:  (310) 203-0567

7  Attorneys for Defendants Royal Bank of
   Canada and City National Bank

8                UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 Fausto Bustos,                        Case No. 2:21-cv-04879-JAK (GJSx)

12              Plaintiff,               **NOTICE OF MOTION AND
                                         MOTION OF DEFENDANT ROYAL
13      v.                               BANK OF CANADA TO DISMISS
                                         PLAINTIFF'S COMPLAINT
14 Royal Bank of Canada, a corporation; PURSUANT TO FED. R. CIV. P.
   City National Bank, a corporation; and 12(B)(6); MEMORANDUM OF
15 Does 1-10, inclusive,,               POINTS AND AUTHORITIES**

16              Defendants.              *[Declaration of Vince Farhat filed
                                         concurrently herewith]*
17
                                         Hearing Date:  January 10, 2022
18                                       Hearing Time: 8:30 a.m.
                                         Courtroom:      10B
19
                                         The Hon. John A. Kronstadt
20

21

22 **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

23      **PLEASE TAKE NOTICE THAT** on January 10, 2022, at 8:30 a.m., or as

24 soon thereafter as counsel may be heard, in the courtroom of the Honorable John A.

25 Kronstadt, located in the First Street Courthouse, 350 West 1st Street, Los Angeles,

26 CA 90012, Defendant Royal Bank of Canada ("RBC") will and hereby does move

27 the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an

28 Order dismissing the action with prejudice as to RBC on the grounds that Plaintiff

69304799v14

1  Fausto Bustos' ("Plaintiff") Complaint fails to state a claim upon which relief can be
2  granted. Specifically, Plaintiff does not and cannot plead the requisite employment
3  relationship with RBC or that RBC is liable for the conduct of his employer,
4  defendant City National Bank, as required under the Sarbanes-Oxley Act
5  whistleblower protection statute. *See* 18 U.S.C. § 1514A(a).

6      This Motion is based on this Notice of Motion, the attached Memorandum of
7  Points and Authorities, the Declaration of Vince Farhat filed concurrently herewith,
8  all of the pleadings, files, and records in this proceeding, all other matters of which
9  the Court may take judicial notice, and any argument or evidence that may be
10  presented to or considered by the Court prior to its ruling.

11
12  DATED:  September 1, 2021     JEFFER MANGELS BUTLER &
13              MITCHELL LLP
14              MARTA M. FERNANDEZ
            VINCE FARHAT
15              BRIANNA FRAZIER EARLEY

16
17      By:     */s/ Vince Farhat*
18                MARTA FERNANDEZ
19                VINCE FARHAT
        Attorneys for Defendants Royal Bank of
20          Canada and City National Bank
21
22
23
24
25
26
27
28

69304799v14

JMBM | Jeffer Mangels Butler & Mitchell LLP

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION .......................................................................................... 1

II.     SUMMARY OF RELEVANT ALLEGATIONS ........................................... 2

III.    LEGAL STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS ......... 2

IV.     THE COURT SHOULD DISMISS RBC WITH PREJUDICE ....................... 3

      A.      The Mere Fact that CNB is a Wholly-Owned Subsidiary of RBC is Insufficient to Establish an Employee-Employer Relationship Between Plaintiff and RBC .............................................................. 5

      B.      Plaintiff Offers No Factual Support for his Conclusory Assertion that RBC was His "Joint Employer". ............................................... 9

      C.      Plaintiff Offers No Factual Support for His Conclusory Assertion that CNB and RBC were Each Other's Agents. .................................. 11

V.      CONCLUSION ............................................................................................. 11

RBC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 2, 3

*Bell Atlantic Corp. v. Twombley*,
550 U.S. 544 (2007) ..................................................................................... 3

*Guitron v. Wells Fargo Bank, N.A.*,
No. C 10-3461 CW, 2012 WL 2708517 (N.D. Cal. July 6, 2012)........................ 4

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...................................................................... 3

*Jeld-Wen, Inc. v. Super. Ct.*,
131 Cal.App.4th 853 (2005) .......................................................................... 7

*Laird v. Capital Cities/ABC, Inc.*,
68 Cal.App.4th 727 (1998) ............................................................................ 7

*Lawrence v. Int'l Bus. Mach.*,
No. 12cv8433(DLC), 2017 WL 3278917 (S.D. N.Y. Aug. 1, 2017)............ 7, 8, 9

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
No. 4:20CV68-RWS-CMC, 2020 WL 7000874 (E.D. Tex. Oct. 19,
2020) ........................................................................................................... 6

*Maa v. Carnival Corp. & PLC*,
No. CV 20-6341 DSF, 2020 WL 5633425 (C.D. Cal. Sept. 21,
2020) ........................................................................................................... 5

*Miller v. Swiss Re Underwriters Agency, Inc.*,
No. CV-09-09551 DDP, 2010 WL 935697 (C.D. Cal. Mar. 15,
2010) ........................................................................................................... 6

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
766 F.3d 212 (2nd Cir. 2014) ....................................................................... 5

*Silvas v. E*Trade Mortg. Corp.*,
421 F.Supp.2d 1315 (S.D. Cal. 2006) ........................................................... 3

JMBM | Jeffer Mangels Butler & Mitchell LLP

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal.App.4th 523 (2000) ........................................................................... 11

*Terrell v. Samuel, Son & Co. (USA), Inc.*,
    No. EDCV 20-587 ............................................................................... 10, 11

*Thompson v. Quorum Health Res., LLC*,
    No. 1:06-CV-168-R, 2007 WL 2815972 (W.D. Ky. Sept. 27, 2007) .................. 5

*U.S. ex rel. Ligai v. ETS-Lindgren, Inc.*,
    No. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ........................... 5

*Urrutia v. Chipotle Mexican Grill, Inc.*,
    No. CV16-02065-BRO, 2017 WL 2901717 (C.D. Cal. June 16,
    2017) ......................................................................................... 6, 7, 9, 10, 11

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) ........................................................................ 4

*Wynn v. Nat'l Broad. Co., Inc.*,
    234 F.Supp.2d 1067 (C.D. Cal. 2002) ........................................................... 9

**STATUTES**

18 U.S.C.
    § 1514A(a) ............................................................................................ 2, 3, 4
    § 1514A(a)(1) .............................................................................................. 4

**OTHER AUTHORITIES**

Dodd-Frank Wall Street Reform and Consumer Protection Act, PL
    111-203, 124 Stat. 1376, 1852 (July 21, 2010) ............................................. 4

Federal Rules of Civil Procedure
    Rule 12(b)(6) ................................................................................. 1, 2, 3, 10

JMBM | Jeffer Mangels
Butler & Mitchell LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The gravamen of Plaintiff's Complaint for whistleblower retaliation is relatively straightforward—Plaintiff claims that after he raised concerns to City National Bank ("CNB") about internal accounting issues, his "superiors" at CNB became so resentful that they "plotted to oust him" and "devis[ed] a layoff scheme" to conceal their retaliatory animus.

But without any sufficient allegations, let alone evidence, Plaintiff also attempts to sue CNB's parent company, Royal Bank of Canada ("RBC").  Plaintiff never worked for RBC, supervised anyone at RBC, or reported to anyone at RBC. He never received a job offer from RBC; his offer letter is for employment with CNB—and only CNB—and signed by an employee of CNB.  He never reported to work at any RBC office or facility.  He received no performance reviews from RBC. RBC was not involved in any way whatsoever in CNB's personnel decisions concerning Plaintiff, including hiring, discipline, promotions, demotions, or termination.  RBC and CNB did not share human resources, operational, or executive management functions in any way that affected Plaintiff's employment. Critically, Plaintiff does not and cannot make a single allegation to the contrary, because it would be untrue.  His inability to do so is fatal to his claim against RBC, which is why the Complaint must be dismissed with prejudice against RBC.

Further, the Sarbanes-Oxley Act expressly permits a whistleblower claim against a private employer where, as here, the employer is the wholly-owned subsidiary of a publicly traded company.  Thus, in order to proceed against CNB, Plaintiff need not name RBC as a defendant.  Nevertheless, Plaintiff declined to dismiss RBC or amend his Complaint during the meet and confer process.  Instead, Plaintiff insists on moving forward with a Complaint that is, without question, utterly conclusory and devoid of even a modicum of factual support.

As set forth more fully below, Plaintiff does not and cannot establish an

1  employment relationship with RBC, nor can he establish that liability for CNB's

2  conduct is properly imputed to RBC.  The mere fact that CNB is a wholly-owned

3  subsidiary of RBC does not create an employee-employer relationship between

4  Plaintiff and RBC, as required to state a claim for whistleblower retaliation.

5  Plaintiff's undifferentiated, conclusory allegations fall far short of showing that CNB

6  and RBC are a "joint enterprise" or "single employer", and there is no support for

7  Plaintiff's bald assertion that he was jointly employed by RBC and CNB.  Nor does

8  the Complaint allege any indicia of an agency relationship between RBC and CNB.

9  Accordingly, Plaintiff's Complaint should be dismissed with prejudice as to RBC.

10  **II.   SUMMARY OF RELEVANT ALLEGATIONS**

11      Plaintiff pleads one claim for relief against CNB and CNB's parent company,

12  RBC—retaliation in violation of the Sarbanes-Oxley Act.  But the Complaint is

13  devoid of *any* specific allegations regarding RBC.  Blurring the distinction between

14  CNB and RBC, the Complaint begins by identifying them, "collectively," as

15  "Defendants" or "the Bank."  Complaint ¶ 1.  This is undoubtedly intentional—

16  Plaintiff hopes to obscure the truth that CNB and RBC are two legally separate

17  corporate entities.  Beyond conflating the alleged actions or omissions of the two

18  different Defendants, Plaintiff sets forth bare legal conclusions as to various

19  doctrines under which RBC could theoretically be held liable despite the absence of

20  allegations of a direct employment relationship—*i.e.*, at all relevant times, "each

21  Defendant was an agent, … joint employer, integrated enterprise, and/or joint

22  venture of every other Defendant."  *Id*. at ¶ 46.  Other than a few passing references

23  to RBC's auditors (*see id.* ¶¶ 3, 11, 36), Plaintiff does not offer any factual support

24  for imputing liability for CNB's conduct to RBC.

25  **III.   LEGAL STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS**

26      To avoid dismissal under Rule 12(b)(6), a complaint must "contain sufficient

27  factual matter, accepted as true, to 'state a claim to relief that is plausible on its

28  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As the United States Supreme

1  Court explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

2  to relief' requires more than labels and conclusions, and a formulaic recitation of a

3  cause of action's elements will not do." *Bell Atlantic Corp. v. Twombley*, 550 U.S.

4  544, 555 (2007).

5        In ruling on a Rule 12(b)(6) motion, the Court must generally assume the

6  veracity of the complaint's allegations. *Id*. However, "legal conclusions need not be

7  taken as true merely because they are cast in the form of factual allegations." *Silvas*

8  *v. E\*Trade Mortg. Corp.*, 421 F.Supp.2d 1315, 1317 (S.D. Cal. 2006); *see also*

9  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the

10  allegations contained in a complaint is inapplicable to legal conclusions."). Nor is

11  the court required to consider "allegations that are . . . unwarranted deductions of

12  fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049,

13  1055 (9th Cir. 2008). Accordingly, "[t]hreadbare recitals of the elements of a cause

14  of action, supported by mere conclusory statements" or "unadorned, the defendant-

15  unlawfully-harmed-me accusation[s]" will not withstand a motion to dismiss. *Iqbal*,

16  556 U.S. at 678.

17  **IV.**    **THE COURT SHOULD DISMISS RBC WITH PREJUDICE**

18        Plaintiff's sole claim against both Defendants is under the Sarbanes-Oxley Act

19  ("SOX"). Specifically, Plaintiff relies upon 18 U.S.C. § 1514A(a), titled

20  "Whistleblower Protection for Employees of Publicly Traded Companies." The

21  statute, by its express terms, applies to *employers* and is *not* limited to publicly

22  traded companies:

23        No company with a class of securities registered under section 12 . . . or

24        that is required to file reports under section 15(d) of the Securities

25        Exchange Act . . . *including any subsidiary or affiliate* whose financial

26        information is included in the consolidated financial statements of such

27        company, . . . may discharge, demote, suspend, threaten, harass, or in

28        any other manner discriminate against an *employee* in the *terms and*

JMBM | Jeffer Mangels Butler & Mitchell LLP

*conditions of employment* because of any lawful act done by the *employee* . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [certain enumerated federal laws], any rule or regulation of the Securities and Exchanges Commission, or any provision of Federal law relating to fraud against shareholders . . ..

18 U.S.C. § 1514A(a)(1) (emphasis added); *see also* Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, 124 Stat. 1376, 1852 (July 21, 2010) (amending Section 1514A to provide protection for employees of subsidiaries of publicly traded companies).

There are "four required elements of a prima facie case under § 1514A: (a) [t]he employee engaged in a protected activity or conduct; (b) [t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity; (c) [t]he employee suffered an unfavorable personnel action [*i.e.*, an adverse action with respect to the terms and conditions of his employment]; and (d) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (internal citations and quotations omitted); *see also Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW, 2012 WL 2708517 at *13 (N.D. Cal. July 6, 2012) (quoting *Van Asdale*).

Here, the Court should dismiss the Complaint with prejudice as against RBC because Plaintiff fails to plead the requisite employee-employer relationship with RBC. Nor does the Complaint make sufficient allegations to establish that RBC is liable for CNB's alleged wrongful conduct under "joint enterprise" or "single employer" theories of liability.

1

A.   **<u>The Mere Fact that CNB is a Wholly-Owned Subsidiary of RBC is</u>**

2

**<u>Insufficient to Establish an Employee-Employer Relationship</u>**

3

**<u>Between Plaintiff and RBC.</u>**

4    Plaintiff does not plausibly allege in the Complaint that RBC was his

5    employer.  Plaintiff cannot plead the elements of a SOX whistleblower claim against

6    RBC, because the claim necessarily exists only against a plaintiff's employer, and

7    RBC never employed Plaintiff.  Virtually all of the allegations in the Complaint are

8    focused on *CNB's* conduct as Plaintiff's former employer.  Plaintiff improperly tries

9    to bring RBC into this case by relying on the fact that CNB "is a wholly-owned

10   subsidiary" of  RBC.  *See* Complaint ¶¶ 1, 10.  But CNB's status as a wholly-owned

11   subsidiary of RBC does not create an employee-employer relationship between

12   Plaintiff and RBC.

13   It is well-settled that "a parent is considered a legally separate entity from its

14   subsidiary, and cannot be held liable for the subsidiary's actions based solely on its

15   ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp.*

16   *v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2nd Cir. 2014); *see also Maa v. Carnival*

17   *Corp. & PLC*, No. CV 20-6341 DSF (SKx), 2020 WL 5633425 at *9 (C.D. Cal.

18   Sept. 21, 2020) ("the mere fact that Carnival Corporation is the corporate parent of

19   Princess is insufficient by itself to impose any duty on Carnival"); *U.S. ex rel. Ligai*

20   *v. ETS-Lindgren, Inc.*, No. H-112973, 2014 WL 4649885 at *20 (S.D. Tex. Sept. 16,

21   2014) (the "parent-subsidiary relationship is insufficient to state a claim that [parent]

22   was [plaintiffs'] employer or involved in the decisions they challenge"); *Thompson*

23   *v. Quorum Health Res., LLC*, No. 1:06-CV-168-R, 2007 WL 2815972 at *2 (W.D.

24   Ky. Sept. 27, 2007) (dismissing False Claims Act retaliation claim against defendant

25   because "the fact that [defendant] is the parent corporation of Plaintiff's employer is

26   not enough to make [defendant] Plaintiff's employer as well").  Rather, a parent is

27   liable for its subsidiary's actions only if the "alleged wrong can seemingly be traced

28   to the parent through the conduit of its own personnel and management, and the

parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership." *Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 4:20CV68-RWS-CMC, 2020 WL 7000874 at *22 (E.D. Tex. Oct. 19, 2020).

To prevent this theory of liability from "extinguishing the general rule of parent corporation immunity from the obligations of a subsidiary," it must be "carefully limited" to situations in which the parent "has forced the subsidiary to take the complained-of action, in disregard of the subsidiary's distinct legal personality." *Lozada-Leoni* at *22-23.  A plaintiff therefore bears a "heavy burden" in establishing that a parent and its subsidiary are a "single employer" or "integrated enterprise." *Miller v. Swiss Re Underwriters Agency, Inc.*, No. CV-09-09551 DDP (JEMx), 2010 WL 935697 at *2 (C.D. Cal. Mar. 15, 2010).

To meet the integrated enterprise test, Plaintiff must allege that RBC "exercises control over [CNB] 'to a degree that exceeds the control normally exercised by a parent corporation.'" *Id.*  Courts consider four factors in making this determination:  "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Urrutia v. Chipotle Mexican Grill, Inc.*, No. CV16-02065-BRO (MRWx), 2017 WL 2901717 at *11 n. 11 (C.D. Cal. June 16, 2017).  Thus, the integrated enterprise test "functions essentially as a kind of 'transaction-specific' alter ego [analysis]." *Lozada-Leoni*, 2020 WL 7000874 at *22.

Here, Plaintiff does not and cannot meet his heavy burden of alleging that the parent (RBC) is liable for its subsidiary's (CNB's) actions.  The Complaint fails to make any specific allegations that RBC interfered with CNB's operations in a way that goes beyond the control exercised by a parent as an incident of ownership. Instead, the Complaint merely recites (in a conclusory fashion without factual support) that RBC "was an integrated enterprise, and/or joint venture" of CNB.

Jeffer Mangels
Butler & Mitchell LLP
JMBM

1   Complaint ¶ 12.[1]  However, these kinds of bare, unsupported legal conclusions do

2   not pass muster under an integrated enterprise theory of liability.

3       The Complaint in this action contains *no allegations whatsoever* that RBC

4   exercised centralized control over the employment decisions relating to Plaintiff.

5   Rather, the Complaint's allegations focus on the conduct of CNB, which is alleged

6   to have hired, supervised, and terminated Plaintiff.  Plaintiff does not allege that

7   RBC did any of these things, because he cannot do so truthfully.  Absent any

8   specific allegations of centralized control of labor relations, RBC's ownership of

9   CNB simply is not enough to establish RBC's alleged liability for Plaintiff's

10  termination.  *See, e.g., Urrutia*, 2017 WL 2901717 at *11 ("centralized control of

11  labor relations is often considered the most relevant of the factors"); *Laird v. Capital*

12  *Cities/ABC, Inc.*, 68 Cal.App.4th 727, 738 (1998) ("common ownership or control

13  alone" is "never enough to establish" single employer liability) (citing *Frank v. U.S.*

14  *West, Inc.*, 3 F.3d 1357, 1364 (10th Cir. 1993)).

15      Plaintiff tries to hide his inability to state a claim against RBC by jointly

16  referring to CNB and RBC as "Defendants" or "the Bank".  Complaint ¶ 1.  CNB

17  and RBC are two separate banks, not one and the same.  Indeed, even Plaintiff's

18  conclusory single-employer allegation groups together not just RBC and CNB, but

19  also the Doe defendants.  *See id.* ¶ 12 ("each Defendant"—*i.e.*, CNB, RBC, and

20  Does 1-10—"was an integrated enterprise . . . of every other Defendant").  But this

21  type of "group pleading" cannot be used to state a SOX whistleblower retaliation

22  claim against RBC.

23      For example, in *Lawrence v. Int'l Bus. Mach.*, No. 12cv8433(DLC), 2017 WL

24  3278917 at *5 (S.D. N.Y. Aug. 1, 2017), the plaintiff asserted a Dodd-Frank

25  whistleblower retaliation claim against his former employer, Seterus, Inc.

26  _____

27  [1]  The terms "joint enterprise" and "integrated enterprise" are "used interchangeably
    with the term 'joint venture' and courts have not drawn any significant legal

28  distinction between the two."  *Jeld-Wen, Inc. v. Super. Ct.*, 131 Cal.App.4th 853,
    872 (2005).

JMBM | Jeffer Mangels
Butler & Mitchell LLP

("Seterus"), and its parent company, IBM.  *Id*. at *1.  In response to IBM's motion to dismiss, the plaintiff "urge[d] the application of the single employer [doctrine] . . . to hold IBM liable."  *Id*. at *5.  The Court declined to do so, reasoning that "group pleading" is not enough to hold a parent corporation liable under the single employer doctrine:

> The [Second Amended Complaint ("SAC")] largely engages in group pleading, alleging that various actions were taken by the "defendants." But group pleading will not suffice to hold a parent corporation liable under [the single employer doctrine.]  The SAC's more concrete allegations do not allege facts from which a . . . single employer relationship between IBM and Seterus can be plausibly inferred.  For example, the SAC alleges that "employees for IBM and Seterus often work out of the same facility" and "many IBM employees have transitioned to Seterus and vice versa."  It does not allege, for instance, that IBM exercised immediate control over Seterus's employees, that IBM controlled Seterus's labor relations, or that operations between IBM and Seterus were interrelated in a way that is relevant to this analysis.  While IBM entered into the contract at issue with Fannie Mae, as described in the SAC, the loan servicing work was performed by Seterus and it was Seterus that Fannie Mae audited.  And, while [plaintiff] sent copies of one report and spoke to certain IBM employees, his reporting obligations were owed to Seterus and he sent his written reports to his superiors at Seterus for their review.
>
> . . .
>
> In sum, because the SAC does not plausibly allege that IBM was [plaintiff's] direct employer, or that a . . . single employer relationship may have existed between IBM and Seterus, the motion to dismiss the retaliation claims against IBM is granted.

1    *Id.* at \*5-6 (internal citations omitted).

2       As against RBC, Plaintiff's Complaint here is nothing more than a textbook

3  example of the "group pleading" that the *Lawrence* court rejected, and therefore

4  warrants dismissal for the same reason.

5       Moreover, Plaintiff's abject failure to meet the most elementary pleading

6  requirements should compel dismissal with prejudice, particularly given that

7  Plaintiff had an opportunity to amend his Complaint following the parties' pre-filing

8  conference of counsel.  *See* Farhat Decl. ¶ 4.

9      **B.**   **Plaintiff Offers No Factual Support for his Conclusory Assertion**

10         **that RBC was His "Joint Employer".**

11       Plaintiff states in his Complaint (without any support) that each Defendant

12  was a joint employer of every other Defendant.  *See* Complaint at ¶ 12.  In the first

13  place, whether any Defendant employed any other Defendant is irrelevant (and

14  untrue)—the issue is who employed *Plaintiff*, not the Defendants.  The Complaint

15  itself is devoid of any specific allegations supporting Plaintiff's conclusory claim

16  that he was jointly employed by RBC and CNB.

17       In accordance with the general principle that "corporate entities have separate

18  existences," there is a "strong presumption against holding a parent corporation

19  liable for the acts or omissions of [its] subsidiary."  *Urrutia v. Chipotle Mexican*

20  *Grill, Inc.*, No. CV16-02065-BRO (MRWx), 2017 WL 2901717 at \*11 (C.D. Cal.

21  June 16, 2017).  While a plaintiff may overcome this presumption if "the entities can

22  be considered 'joint employers,'" or "one entity is the agent of another entity," "the

23  corporate form is disregarded only when the ends of justice require this result."  *Id*.

24       Two or more employers may be considered "joint employers" only if "both

25  employers control the terms and conditions of employment of the employee."  *Wynn*

26  *v. Nat'l Broad. Co., Inc.*, 234 F.Supp.2d 1067, 1093 (C.D. Cal. 2002).  Joint

27  employer status depends on the following:  "(1) the nature and degree of control

28  over employees; (2) the day-to-day supervision of employees, including discipline;

JMBM | Jeffer Mangels Butler & Mitchell LLP

(3) the authority to hire and fire employees and set conditions of employment; (4) the power to set pay rates or payment methods; and (5) control of employee records, including payroll." *Urrutia*, 2017 WL 2901717 at *11 n. 12 (citing *Jones v. County of Los Angeles*, 99 Cal.App.4th 1039, 1045-46 (2002)).

The same pleading standard used to evaluate single employer allegations applies to joint employer allegations. In this regard, *Terrell v. Samuel, Son & Co. (USA), Inc.,* No. EDCV 20-587 JGB (KKx), 2020 WL 5372107 (C.D. Cal. Apr. 23, 2020), is instructive. In *Terrell*, the plaintiff asserted wage and hour claims against three entity defendants. The entity defendants moved for dismissal under Rule 12(b)(6), arguing that the plaintiff's claims "rely on a joint employer theory," but plaintiff "fails to allege differentiated facts detailing each [d]efendant's wrongdoing." *Id*. at *2. The Court agreed, reasoning that undifferentiated, generalized, and threadbare allegations against multiple defendants do not satisfy federal pleading standards for joint employer claims:

> Plaintiff cannot establish how or why each Defendant was a joint employer because Plaintiff's allegations against Defendants are entirely undifferentiated. For example, Plaintiff alleges broadly that "Defendants . . . employed Plaintiff as an hourly-paid employee" and that "Defendants had the authority to hire and terminate Plaintiff . . . [and] exercised sufficient authority over the terms and conditions of Plaintiff . . . for them to be joint employers of Plaintiff." These conclusory allegations lack the requisite specificity and fail to go beyond mere recitations of the elements of joint employer liability. Moreover, they are entirely devoid of the necessary differentiation between Defendants to determine "the totality of the working relationship of the parties." *Indeed, a lack of differentiation in allegations against multiple defendants is typically cause for dismissal in any context, let alone the joint employer context. . . .* By making

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    generalized and threadbare allegations against all Defendants, the

2    Complaint succeeds against none.

3  *Id*. at *3 (internal citations omitted) (emphasis added).

4    Here, Plaintiff's allegations are even more conclusory than those at issue in

5  *Terrell*, as Plaintiff does not even state the basic elements necessary to proceed on a

6  joint employer theory of liability.  The Complaint is devoid of any assertion that

7  RBC was involved in any manner whatsoever in CNB's employment decisions,

8  Human Resources policies, procedures, and operations, or compensation or benefit

9  determinations.

10   **C.    Plaintiff Offers No Factual Support for His Conclusory Assertion**

11        **that CNB and RBC were Each Other's Agents.**

12   Plaintiff further states in his Complaint (again, without any support) that each

13 Defendant was an agent of every other Defendant.  *See* Complaint at ¶ 46.  A parent

14 company is not liable for the acts or omissions of its subsidiary under an agency

15 theory unless its control of the subsidiary is so complete as to render the subsidiary a

16 mere "instrumentality" of the parent.  *Urrutia v. Chipotle Mexican Grill, Inc.*, No.

17 CV16-02065-BRO (MRWx), 2017 WL 2901717 at *17 (C.D. Cal. June 16, 2017);

18 *see also Sonora Diamond Corp. v. Super. Ct.*, 83 Cal.App.4th 523, 541-42 (2000)

19 ("As a practical matter, the parent must be shown to have moved beyond the

20 establishment of general policy and direction for the subsidiary and in effect taken

21 over performance of the subsidiary's *day-to-day* operations in carrying out that

22 policy").  Here, too, Plaintiff does not plead any indicia of an agency relationship,

23 let alone any facts supporting the contention that RBC engaged in any conduct

24 beyond that necessary in a parent-subsidiary relationship.

25 **V.    CONCLUSION**

26   For all of the foregoing reasons, this action should be dismissed as to RBC

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   with prejudice.

2

3   DATED:  September 1, 2021         JEFFER MANGELS BUTLER &
                                       MITCHELL LLP
4                                      MARTA M. FERNANDEZ
                                       VINCE FARHAT
5                                      BRIANNA FRAZIER EARLEY

6

7

8                                 By:    _/s/ Vince Farhat_
9                                        MARTA M. FERNANDEZ
                                          VINCE FARHAT
10                                 Attorneys for Defendants Royal Bank of
                                    Canada and City National Bank
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28